THE PEOPLE, RESPONDENT, v. MEDINA, APPELLANT.

APPEAL from the District Court of San Juan, Section 2.

No. 603.—Decided June 11, 1913.

LOTTERY—CONTRACTS ARISING FROM LOTTERIES.—Lotteries are prohibited in Porto Rico and it is a well-established rule that in transactions arising from lotteries the courts will leave the parties where it found them and will not lend their aid either to enforce or rescind such contracts, but in criminal actions arising from such transactions the rule is different, as the judicial power is not employed to aid an individual in securing the proceeds of an unlawful transaction but to prosecute a wrongdoer.

ID.—EMBEZZLEMENT.—A person who wilfully, maliciously and unlawfully appropriates a prize drawn by a lottery ticket confided to him for safe-keeping is guilty of embezzlement.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

The appellant did not appear.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, Section 2, rendered on November 18, 1912, finding the appellant, Felipe or Félix Medina, guilty of embezzlement and sentencing him to one year's imprisonment in the penitentiary at hard labor.

The pertinent part of the information reads as follows:

"During the month of November, 1911, in the city of San Juan, within the judicial district of San Juan, the said Felipe or Félix

Medina did unlawfully, wilfully and maliciously appropriate to his own use a tenth of a Santo Domingo lottery ticket, numbered 9562, which he had received from Inocencio Hernández for safekeeping to be returned at the request of the latter, knowing that said ticket had drawn the capital prize in the Santo Domingo lottery, the said Medina collecting and appropriating unto himself the amount thereof, thus depriving Inocencio Hernández of the sum of $1,000, which was the value of the ticket.''

The evidence introduced at the trial is not included in the transcript of the record and the only question to be considered is whether the acts with which the accused is charged in the information constitute a public offense. The appellant did not appear at the hearing of the appeal held on June 4, 1913, but it appears that he alleged in the court below that the offense had not been committed, basing his allegation on the fact that the money alleged to have been appropriated was the proceeds of a lottery prize and that the lottery is a form of gambling prohibited by the laws of Porto Rico.

In our opinion the theory advanced by the accused is without foundation.

The Supreme Court of the United States in the case of *Phalen* v. *Virginia,* 8 How., 163, 168, said:

"Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple."

It is true that playing lotteries is prohibited by law in Porto Rico and that the law does not permit any action to claim what is won in a game of chance, luck, or hazard (section 1700 of the Civil Code); also, the rule is well settled that in lottery transactions, as in all unlawful contracts generally, the courts will leave the parties where it found them and will not lend its aid either to enforce or rescind the contract (25

Cyc., 1655); but it is also a fact that this is not a civil action but a criminal case and that, therefore, a different rule applies as the judiciary power is not invoked to aid an individual in securing the proceeds of an unlawful transaction, but to prosecute a wrongdoer for the commission of an act clearly constituting a crime.

"It is further claimed by appellant's counsel that the second count of the indictment was bad, both on the motion to quash and the motion in arrest, because the moneys of Miller, which were the subject of the embezzlement charged, were shown to have been collected on a lottery ticket, and, as lotteries were prohibited by the laws of this State, were derived from an illegal source. *United States Express Co.* v. *Lucas,* 36 Ind., 361; *Rothrock* v. *Perkinson,* 61 Ind., 39; *State* v. *Tumey,* 81 Ind., 559. In the case last cited, the opinion of the court concludes as follows: 'In such a case, it seems to us that the fact, if it were the fact, that the appellee received such money, as such agent, for his principal, the association, upon an illegal consideration, and in the transaction of an unlawful business, did not constitute any valid or sufficient defence to him, the appellee, in this prosecution against him for his alleged embezzlement of such money.' " *Woodward* v. *The State,* 103 Ind., 127, 132; 2 Northeastern Rep., 324.

"One who sells pools and runs off with the money embezzles the money of the purchaser of the pools. The fact that the money was put in the pool seller's hands for purposes of gaming has nothing to do with it." *State* v. *Shadd,* 80 Mo., 358; 18 American Digest (Century Ed.), 671.

See also the case of *González* v. *Ortiz,* 17 P. R. R., 563.

Having thus disposed of the question raised and finding from the record that no fundamental error has been committed, the appeal should be dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández, Justices Wolf and Aldrey concurred.

Mr. Justice MacLeary did not take part in the decision of this case.