# County of Cass, Appellee, v. E. H. Kloker, Appellant.

## Gen. No. 7,927.

1. COUNTIES—*recovery back of payments illegally made to county commissioner for services as overseer of poor.* A county not under township organization may recover back from a commissioner thereof sums paid to him by order of the board of which he was a member for services as overseer of the poor, such payment being in addition to the regular per diem received as commissioner, notwithstanding the sums paid were reasonable in view of the services rendered and the inability of the board to find another suitable person to perform them.

2. COUNTIES—*right of commissioner to retain compensation paid for services as overseer of poor.* A county commissioner acquires no right to retain sums paid to him by the board of which he was a member, in a county not under township organization, for services rendered as overseer of the poor, by virtue of the fact that the

board approved his claim therefor after the services were rendered, where he would have had no right thereto had the board regularly appointed him to perform such services.

Appeal by defendant from the Circuit Court of Cass county; the Hon. GUY R. WILLIAMS, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed December 31, 1925.

W. H. DIETERICH, for appellant.

WALTER F. DODD, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

Cass County at the time the services sued for by appellant were rendered was not under township organization. He was one of the county commissioners of the county at all times during which the services were rendered. He had been paid by order of the county board the sum of $1,600 for services as overseer of the poor. The payments were made at the rate of $50 per month and paid in sums of $150 quarterly as salary for such services. No part of the sum paid included his salary of $5 per day as county commissioner. To recover the amount paid to him as overseer, the County brought suit and at the trial before the court, without a jury, a judgment was rendered against him for the amount stated. To reverse the judgment he has appealed to this court.

Appellant was never appointed overseer of the poor. His testimony was that he performed services as such because he was unable to obtain a suitable person to perform them. He looked after the relief of the poor in five precincts in the west end of the county comprising a territory extending thirteen miles east and west and about the same distance north and south including a city of 9,000 inhabitants. No person other than he was engaged in that work during that period. He spent from ten to twenty days per month looking after the relief of the poor and made no charges for

conveyance. The amount claimed was reasonable compensation for the work.

The statement upon which this case is decided is taken almost literally from the brief of appellant. So far as any fact was presented to the trial court or urged here, there is no controversy. The materiality of the facts presented by defendant below, and the legal effect of those facts, in resistance to the demand and the judgment rendered is present in the record.

In counties not under township organization, the county board shall designate some justice of the peace, or some other suitable person in each precinct therein, who shall be overseer of the poor in such precinct. Chapter 107, sec. 19, Smith-Hurd's Statutes. [Cahill's St. ch. 107, ¶ 19.] County commissioners and members of the county boards in counties not under township organization, while transacting county affairs, shall severally be allowed $5 per day for the time necessarily and actually employed in the discharge of their duties, and five cents a mile for all necessary travel, and no other allowance, directly or indirectly, for any purpose whatever. Chapter 53, sec. 56, Id. [Cahill's St. ch. 53, ¶ 51.] It shall be and is hereby declared unlawful for any supervisor or county commissioner, during the term of office for which he is elected, to be appointed to, accept or hold any office, by appointment or election of the board of which he may be a member; and any and all appointments and elections by the board of supervisors or county commissioners, whereby any member or members of said board, or either of them, may be selected to fill any official position, shall be absolutely null and void. Chapter 102, sec. 1, Id. [Cahill's St. ch. 102, ¶ 1.]

It would seem unnecessary to say more in the decision of this case. If appellant was appointed by the county board as overseer of the poor, the appointment was null and void. But in addition to that, by section 4 [¶ 4] of the Act last quoted, he may be punished

by confinement in the penitentiary for a term not less than one year nor more than five years, or fined in a sum not less than $200 nor more than $1,000, or both, in the discretion of the court before which such conviction shall be had; and in addition thereto his office would become vacant, and would be so declared as part of the judgment of the court; and furthermore "he shall be disqualified from holding any office or position of trust and confidence in the state for a period of two years from the date of such conviction."

The public policy of the State is declared by its legislation. No stronger declaration of that policy can be found than that pronounced in the legislation quoted. The act of appellee in having the several claims allowed and paid to him while he was county commissioner was not only forbidden; it was denounced with the pains and penalties of practical outlawry—a denial of the most sacred rights of citizenship though only to a limited extent. We do not understand from the record that he was appointed by the county board. But his acts were attempted by it to be ratified by allowing compensation out of the county treasury. This was one of the evils against which the legislation was directed. If he could not be appointed he could not be paid. An illegal and void act cannot be ratified. Taking the money, therefore, under the thin disguise of authority amounted to taking it without authority. Only recently the Supreme Court held that a member of the General Assembly voting for appropriations to an officer of the State government could not legally accept employment from such officer. It was held that, having accepted a part of such appropriation, it was illegally held by him and he must restore it to the State treasury. *Saxby v. Sonnemann,* 318 Ill. 600. In *School Directors v. Parks,* 85 Ill. 338, it was held that where money was paid to a school director for services rendered and supplies furnished while he was director, it could be recovered back for it was il-

legally obtained. The principle supporting the judgment is announced in *Moffett v. People,* 134 Ill. App. 550, where recovery of money was allowed under an illegal act of a county board similar to that here.

We do not consider the excuse he offers for the necessity of his acting as overseer of the poor. It is evident the circuit judge trying the case did not consider it. It could afford no justification for taking money the legislature forbade him to take. The law governing his conduct is not qualified but mandatory. Not more plausible is the contention that he was not appointed to the office of overseer. If not, then he was a mere volunteer. The fallacy of this contention is too palpable to require notice. It assumes that while he could not retain the money if appointed, yet if the county board of which he was a member approved his illegal claims for compensation and ordered them paid, and they were paid, he can keep them. This contention overlooks the principle running through every strand of our law that one cannot legally do indirectly what he cannot legally do directly. Indirection is abhorred and reprobated as much in law as in morals and often more certainly.

It is said by counsel there is no proof in the record of any fraud practiced on the part of defendant. It has been said by the sages of the law that courts will not define fraud, for definition might open the door to evasion. By whatever epithet the acts of appellant may be characterized, they are denounced by the statute as "null and void." Fraud of any description could do no more. The adage, "a public office is a public trust" is the foundation of the law supporting the action in this case. Violation of the law is violation of the trust, followed by penalties making plain the enormity of the wrong.

No other judgment than that rendered could have been legally rendered and it is affirmed.

*Affirmed.*