Town of City of Peoria, Appellant, v. Rudy Rauschkolb and Continental Casualty Company, Appellees.

Gen. No. 10,193.

412

Opinion filed February 5, 1948.   Rehearing   denied   March   25, 1948.   Released   for   publication March 30, 1948.

HOMER W. KELLER, of Peoria, for appellant.

CASSIDY, SLOAN & CRUTCHER, of Peoria, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This is a suit which was started in the circuit court of Peoria county by the Town of the City of Peoria, against Rudy Rauschkolb, and the Continental Casualty Company, surety on his official bond as supervisor and overseer of the poor of that town.

The complaint alleges that Rauschkolb was supervisor and overseer of the poor of the Town of the City of Peoria, Illinois, and that he purchased milk for the plaintiff from a dairy in which he owned, operated and controlled, for which he paid $4,606.81, out of the moneys that came into his hands as such overseer of the poor; that he also purchased drugs from one, Chester Wood, in the amount of $11,533.14 from which he made a direct financial profit, by the said Chester Wood, paying to him a commission of ten per cent, on the drugs so purchased from the said Chester Wood.

The defendants made written motions to dismiss the complaint. The court allowed the motions, the plaintiff elected to stand by its complaint, and the court thereupon rendered judgment that the plaintiff take

nothing by its suit. The plaintiff has appealed. Rauschkolb, the principal of the bond, has not filed a brief in this court.

The bond was executed on April 12, 1941. Statutory provisions then in force are hereafter quoted. Section 3 of Chapter 102 [Jones Ill. Stats. Ann. 126.221]:— "It shall not be lawful for any person, now, or hereafter holding any office, either by election or appointment, under the constitution of this State, to become in any manner interested, either directly or indirectly, in his own name, or in the name of any other person or corporation, in any contract, or the performance of any work in the making, or letting of which such officer may be called upon to act or vote. And it shall not be lawful for any such officer to represent, either as agent or otherwise, any person, company or corporation, in respect of any application or bid for any contract or work, in regard to which such officer may be called upon to vote. Nor shall any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value, as gift or bribe, or a means of influencing his vote or action in his official character; and any and all contracts made and procured in violation hereof, shall be null and void."

The surety on the bond in question is the defendant, the Continental Casualty Company, a corporation duly organized under the laws of the State of Indiana. The penalty of the bond is $100,000. The condition of the bond is as follows:— "Now, therefore, if the said principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as said Supervisor, Town of the City of Peoria, except as herein limited, and honestly account for all moneys coming into his hands as said Supervisor, Town of City of Peoria, according to law, then this obligation shall be null and void; it is otherwise to be and remain in full force and virtue." There are no limitations named in the bond. After the

execution of the bond, the surety company attached a rider, or contract, to the bond which recites: "Whereas, it is now desired to correct the title of this principal from Supervisor of the Poor to Supervisor and Overseer of the Poor effective as of the inception of the bond."

"Now, Therefore, it is hereby understood and agreed that said Bond Number 385947 shall cover Rudy Rauschkolb as Supervisor and Overseer of the Poor in the penalty of One Hundred Thousand and no/100 ($100,000.00) Dollars, as of the inception date of the bond."

Bonds of corporations doing a surety business for profit are treated as contracts of indemnity or insurance and, as such, subject to the rules of construction applicable to insurance policies generally. (*People v. Rose,* 174 Ill. 310; *People v. Potts,* 264 Ill. 522; *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee,* 233 Ill. 475; *T. Wilce Co. v. Royal Indemnity Co.,* 289 Ill. 383; *Gunsul v. American Surety Co. of New York,* 308 Ill. 312.) The business of surety companies is in all essential particulars that of insurance. (*People v. Rose,* 174 Ill. 310.)

The amount of the bond of an official entrusted with public funds is usually two or one and one-half times the amount of the funds. The rate of premium charged for such a bond by surety companies is calculated on the amount of the bond and the risk of loss to the companies based on losses of public funds, during many years, resulting from defaults or dishonesty of public officers. Between the governmental body, or unit, and the surety of the bond of a public official entrusted with funds of the governmental body, the official's bond is primarily obtained for the protection of the funds. The intention of the governmental body and the surety company on the bond is that of insurance, or protection, against loss of all or any part of the public funds

resulting from misconduct or unfaithfulness of the official.

■ It is claimed by the appellant that it is entitled to recover from the supervisor, the amount he expended under these illegal transactions, and if they procure a judgment against the supervisor, Rauschkolb, that they also can maintain a suit against the Casualty Company for the amount that the supervisor expended under the void contracts. There is no question but that the overseer, Rauschkolb, violated the statute and his oath of office in purchasing milk from his own dairy company, and getting a commission from the druggist for the drugs, which he bought as overseer of the poor, and that such purchases are prohibited under the statute.

. In the case of *Koons v. Richardson,* 227 Ill. App. 477, the City of Mt. Vernon, Illinois, made an illegal contract (which was prohibited by statute,) with its engineer, for which he was to perform certain services for the city. The court held a suit may be brought by a taxpayer in the name and for the benefit of the city, against any person or corporation, to recover any money, or property belonging to the city, or village, or for any money which may have been paid, expended or released, without authority of law, and stated: "Under those provisions and others of a similar nature, it has been held that an officer of the city, or other municipal corporation is prohibited from making any contract with the corporate authorities for the service or materials for the corporation to be paid for out of the delivery, and that such a contract is null and void, and any money paid thereunder, may be recovered back."

In the case of *McCarthy v. City of Bloomington,* 127 Ill. App. 215, some taxpayers started a suit against McCarthy et al., to recover $533.73, which has been unlawfully paid by the City of Bloomington to McCarthy and his partner for work and labor. It was contended

by the defendants that the city had received full value for the amount of money it had paid the defendants and since there was no damage to the city, they, (the defendants,) should not be held to account for the money. The defendants were aldermen of the City of Bloomington, and under the statute were prohibited from entering into any contract with the city. The court sustained a judgment against the defendants for the amount of money they had illegally received from the city.

In the case of the *County of Cass v. Kloker*, 239 Ill. App. 301, the court held that a county not under township organization, may recover from a commissioner thereof sums paid to him (by order of the board of which he is a member), for services as overseer of the poor, such payment being in addition to the regular per diem received as commissioner, notwithstanding the sums paid were reasonable, in view of the services rendered, and the inability of the board to find another suitable person to perform the services. The court further held that the commissioner acquires no right to retain sums paid to him by the board of which he is a member, for services rendered as overseer of the poor, by virtue of the fact that the board approved his claim therefore, after the services were rendered, where he would have had no right thereto, had the board regularly appointed him to perform such services.

In the case of *School Directors v. Parks,* 85 Ill. 338, two school directors brought a suit against the third director to recover $12.50 for wood which Parks, a school director, had paid himself for wood that he had furnished the school. The court there stated: "The statute in force when these orders were executed, and now, absolutely prohibits a director from being interested in any contract made by the board of which he is a member. This embraces every contract, whether express or implied, by virtue of which money may be

drawn from the treasurer; and it cannot be evaded by appropriations or payments from the treasurer for labor performed, or materials furnished for the benefit of the district, on the pretext they were performed or furnished without any contract, but being beneficial to and enjoyed by the district, should be paid for as a matter of justice. Both the letter and the spirit of the law forbid that directors shall, in anywise, whether directly or indirectly, openly or covertly, become interested in demands or claims, originating while they are directors, to be satisfied by payments from the funds of their districts; and this construction must be rigidly enforced by the courts, without regard to the moral or equitable considerations that may urge a different policy in particular cases.

"If, on another trial, it shall appear that appellee was not, in fact, director when this labor was performed and wood was furnished, he will be entitled to a judgment; otherwise the money paid him on the orders was paid in violation of law, and the district is entitled to recover it from him." To the same effect is *Lee v. City of Venice*, 206 Ill. App. 376 and *School Dist. No. 39, Fayette Co. v. Casey*, 243 Ill. App. 434; *Damron v. City of Eldorado*, 300 Ill. App. 481.

The appellant has cited numerous cases from other jurisdictions that sustain his contention that a suit can be maintained against the defendant, Rauschkolb. The appellee has cited some cases which apparently hold that such a suit cannot be maintained. After an examination of the Supreme Court and Appellate Court cases of our own State, it is our conclusion that such a suit can be maintained against the supervisor, Rauschkolb. Therefore, the trial court erred in sustaining the motion to dismiss the suit.

Part of the penalty of the bond in question is, "If the said principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election, or appointment, etc., and hon-

estly account for all moneys coming into his hands as said supervisor, according to law, then this obligation shall be null and void." If the plaintiff can maintain the suit against the defendant, Rauschkolb, for the money which he illegally spent, then certainly, under the terms of this bond, if the money was not collected from Rauschkolb, the Surety Company would be liable on its bond. The plaintiff elected to sue both the principal, Rauschkolb, and his surety in the same suit, which is authorized by law.

It is our opinion that the trial court erred in sustaining the motion of the Surety Company and the defendant, Rauschkolb, to dismiss the suit against them. The judgment appealed from is hereby reversed and the cause remanded, with directions to overrule the motion to dismiss.

*Reversed and cause remanded.*